106 So.2d 460

**KEMPER, INC., et al.**

v.

**LOUISIANA PUBLIC SERVICE
COMMISSION.**

No. 43889.

Nov. 10, 1958.

Polk, Foote & Neblett, Alexandria, for
plaintiffs-appellants.

Jack P. F. Gremillion, Atty. Gen., George M. Ponder and Kenneth C. Banfield, Jr., Asst. Attys. Gen., for defendant-appellee.

Robert A. Ainsworth, Jr., New Orleans, Robert L. Garrett, Shreveport, H. Payne Breazeale, Baton Rouge, for intervenors-appellees.

HAMITER, Justice.

Plaintiffs in this cause and in the seven companion suits consolidated herewith are carriers by motor vehicle for hire and hold permits authorizing them to operate as *contract carriers*. Each has on file with the Louisiana Public Service Commission five contracts with various shippers and recently tendered for approval at least one additional agreement (some submitted one, others two). But the Commission, through its secretary, refused to approve the additional contracts unless the carriers sought and obtained certificates as *common carriers*. Later, a hearing was had before the Commission and it adhered to the initial position that plaintiffs, as contract carriers, were not entitled to enter into the additional agreements.

Thereupon, the mentioned eight suits were instituted against the Commission, the plaintiffs praying that the defendant be ordered to accept and approve the additional contracts and to permit them, as contract carriers, to furnish transportation in accordance therewith. Numerous motor common carriers and rail common carriers, as well as two contract carriers, intervened in the actions, they supporting the position of and joining the defendant Commission.

After a trial the district court (in separate judgments) dismissed all of the suits, and the plaintiffs appealed.

Our statute dealing with motor carriers and their regulation (LRS 45:161 et seq.) provides, among other things, as follows:

"[162] (4) 'Common carrier by motor vehicle' means any person, the essential nature of whose business comprises engaging in, soliciting or accepting persons or property for transportation for hire, charge, or compensation as an employment or holding himself out as so available to the public generally and indiscriminately for such business, whether or not the business is conducted over a regular route, between fixed termini, within a defined area, or upon a regular or irregular schedule. * * * *Any person who, with or without specific contracts, furnishes such transportation to more than five separate shippers of property or more than five passengers shall be, prima facie, held to be a common carrier and the burden shall rest upon him to show by a clear preponderance and to the satisfaction of the Commission that the character of his operations is not that of a common carrier.* * * *

"[162] (5) 'Contract carrier by motor vehicle' means any person not included under preceding paragraph of this section, who under special and individual contracts or agreements, and whether directly or by other arrangement, transports passengers or property by vehicle for compensation or hire, where in the course of the transportation a highway between two or more incorporated municipalities is traversed.

"[162] (6) 'Contract' as used in this Section means any arrangement, agreement or understanding covering or contemplating the transportation of persons or property for hire, charge or compensation or for any benefit amounting to a consideration, and such arrangement, agreement or understanding shall be considered a contract within the meaning of this paragraph *if it contemplates a reasonably large and regular or periodic movement for a particular party or parties, for a period of time exhibiting some permanence to the arrangement, agreement or understanding.*

\*    \*    \*    \*    \*    \*

"[162] (9) 'Motor Carriers' include both a common carrier by motor vehicle and contract carrier by motor vehicle, or any other classification of carriers created by law, operating for compensation or hire." (Italics ours).

As hereinabove suggested the contention of the defendant Commission and the intervenors is that the plaintiff in the instant suit (as well as each of the plaintiffs in the other suits) is not entitled, as a contract carrier, to have more than five contracts at any one time; and that if it desires to handle additional contracts it must obtain a permit as a common carrier. Alternatively, they maintain that even though this plaintiff (as well as each of the other mentioned plaintiffs) be entitled, as a contract carrier, to operate under more than five contracts simultaneously it has not shown "by a clear preponderance" that it is in effect a contract, not a common, carrier.

After having studied the record of the hearing before the Commission, including the comments and observations made by its members and the testimony given by its administrative personnel, we are convinced that initially the Commission disapproved of the additional contracts because of an assumption that, pursuant to the motor carrier statute, it was authorized to adopt a policy (as it did) that under no circumstances could a contract carrier operate under more than five contracts. And on this appeal (and the other mentioned appeals) the Commission and the intervenors persist in this assumption, they arguing that it is not only proper but it is necessary as well that the policy of the Commission so limiting the contract carri-

ers be maintained. Thus, the following is said in the brief of their counsel:

"If the Commission is not sustained in these suits and if the contract carrier is not limited as to contracts, he will generally be able to transport any commodity to any point in the State at any rate he chooses, for any number of shippers.

" * * * It is apparent, therefore, that a removal of the limitation would give to each contract carrier in the State unlimited authority to transport generally any commodity to any place, at any rate, for any shipper who desires the service. It is apparent that this would be disastrous for all carriers in the State, motor and rail, common and contract. The end result would be chaos and havoc.

*      *      *      *      *      *

"This Commission has acted wisely ever since the Motor Carrier Act of 1938 was enacted by limiting the number of contracts which a contract carrier might have to five. * * * Now, some of these contract carriers would remove this restriction in violation of the very concept upon which the Commission granted these permits. The amount of additional competition that would result would be frightening, and particularly to common carriers whose rates are regulated and prescribed by this Commission. A man would be foolish indeed to desire a common carrier certificate under these circumstances where a contract carrier permit would serve him so much better. But in the long run no one would profit, for the opening of the doors to unlimited, unregulated competition would inevitably spell financial doom to all of these carriers and a serious breakdown in service to the public."

But we find no language in the statute which authorizes the Commission to so limit the number of contracts (provided that, of course, the contract carrier can show that in truth and in fact he is properly operating as such). Rather, by clear implication the statute authorizes more than five contracts when it provides that a person furnishing transportation to more than five separate shippers shall be prima facie held to be a common carrier and he has the burden of showing that such is not the character of his operations. Undoubtedly then a person holding contracts in excess of five, if he can rebut the prima facie presumption, has the right to operate as a contract carrier. If this be not correct the language of the statute relating to the prima facie presumption and the burden of proof means nothing at all. Too, had the Legislature intended a contrary conclusion it would have specifically limited the number of contracts to five;

or it would have made the recited presumption conclusive rather than prima facie.

■ The argument of the Commission and the intervenors respecting the claimed dire economic effect of such result is not impressive. To begin with that is a matter determinable by the Legislature, not by the courts. In fact, the Legislature has given consideration to the asserted consequences, for the statute under which both the common and contract carriers operate gives the Commission ample authority to impose regulations on contract carriers so as to lessen or entirely eliminate allegedly unfair competition between the two types of carriers. Thus, LRS 45:163 provides: "The commission has power and authority necessary to supervise, govern, regulate and control *all motor carriers* and to fix reasonable and just rates, fares, tolls, or charges for the commodities furnished or services rendered by common carriers by motor vehicles. The commission *shall* prescribe rules and regulations governing the *operation of contract carriers in competition with common carriers, and prescribe minimum rates, fares and charges to be collected by contract carriers, which shall not be less than the rates prescribed for common carriers by motor vehicles for substantially the same service."* (Italics ours.)

To the present time, however, the Commission has not seen fit to perform the duty prescribed in the last quoted section. With respect to the provisions contained therein, the chairman of the Commission stated during the hearing of this cause as follows: " * * * Now, maybe if the Commission would do that these contract carriers wouldn't be asking for five or six additional contracts. * * * I am inclined to think right now that if we did what the law says here and fix their rates, they'd probably do much better than they are now." Nor do we agree with the argument that "if the contract carrier is not limited as to contracts he will generally be able to transport any commodity to any point in the state * * * for any number of shippers." A contract, according to the definition contained in the statute (above quoted), "contemplates a reasonably large and regular or periodic movement * * * for a period of time exhibiting some permanence to the arrangement, agreement or understanding." Here again the Legislature has made provision for the Commission's preventing of unfair competition between the contesting carriers.

■ Although we have determined that a contract carrier may be permitted to provide transportation for more than five shippers without necessarily being classified as a common carrier we cannot conclude that in the instant suit (as well as in the seven companion cases) that the plaintiff is presently entitled to the relief for which it prays. We agree with the trial judge that the evidence is "exceedingly scant"; and

the plaintiff, faced with the prima facie presumption that it is a common carrier, has not discharged the burden of showing "by a clear preponderance" that it is operating as a contract carrier.

The case was submitted chiefly on the testimony of Mr. Byron Fogleman, manager of one of the plaintiff carriers. (Incidentally, it appears to have been conceded that if representatives of the other carriers had been called to give testimony they would have testified to substantially the same thing with regard to their respective operations.) Mr. Fogleman's testimony was merely that his company operated as a contract carrier (this is, of course, a conclusion); that it had no terminals; and that it had not held itself out generally and indiscriminately to the public for transportation for hire. We do not believe that such a showing meets the requirements of the statute with respect to the burden of proof.

For the reasons assigned the judgment rendered in this cause by the district court is affirmed. However, the right is reserved to the plaintiff to hereafter file with the Louisiana Public Service Commission contracts in excess of five and to prove "by a clear preponderance", if it can, that it operates as a contract carrier. Plaintiff shall pay all costs.

PONDER, J., absent.