Kenneth E. Peterson, appellant, v. Iowa State Commerce Commission and Members, appellees; Carroll F. and Eva J. Baldwin, d/b/a Inland Express, et al., intervenors-appellees.

No. 51075.

(Reported in 129 N.W.2d 656)

July 16, 1964.

Joseph B. Joyce of Stewart, Miller, Wimer, Brennan & Joyce, Stephen Robinson and Stephen C. Robinson, all of Des Moines, for appellant.

John J. Goen, Commerce Counsel, Harold W. Bracewell and Leo J. Steffen, Jr., Assistant Commerce Counsel, for appellees.

Homer R. Bradshaw of Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, and D. C. Nolan, of Iowa City, for intervenors-appellees.

THORNTON, J.—Plaintiff held a contract carrier's permit issued him by defendant commission October 5, 1960. The defendant commission revoked plaintiff's permit. Plaintiff brought certiorari in the district court to test the legality of the commission's order. The district court sustained the commission's order and plaintiff appeals to us. He urges for reversal the findings of the commission were not sustained by sufficient competent evidence and that section 327.1, subsection 5, Code of Iowa, 1958, is unconstitutional.

The fact situation presented is the same as presented in Wood v. Iowa State Commerce Commission, 253 Iowa 797, 113 N.W.2d 710, and Sherman v. Iowa State Commerce Commission, 253 Iowa 776, 113 N.W.2d 715. The principles of law stated in those cases together with those stated in Circle Express Co.

v. Iowa State Commerce Commission, 249 Iowa 651, 86 N.W.2d 888, govern our consideration of this appeal, except as to the constitutional question which was not presented in any of the three cited cases.

Plaintiff must have a permit to operate, section 327.6, Code of Iowa, 1958. He is subject to the rules and regulations of the commission. See, e.g., sections 327.3, 327.4 and 327.5. His permit may be revoked for just cause, section 327.16. A contract carrier is defined in section 327.1, subsection 5, in pertinent part, as any person who engages in the business of transportation of property by motor truck under individual written contracts, thereby providing a special and individual service required by the peculiar needs of a particular shipper. In the same section individual written contract is defined as an agreement in writing between a contract carrier and a shipper, effective for a duration of at least three months, imposing mutual obligations to tender freight and perform transportation, and specifying the charges. Section 327.1, subsection 5, continues, "The presence of goods originating from more than five shippers on one vehicle at any one time shall be prima-facie evidence that the carrier is a motor carrier and not a contract carrier." Section 327.1, subsection 5, as it appears in the 1958 Code, applicable here, was enacted by the Fifty-seventh General Assembly, chapter 170, section 2, and became effective July 4, 1957. The word "shipper" did not appear in the former section.

As in the Sherman case, plaintiff here was making deliveries of freight loaded on his truck at the dock of Arrow Express Forwarding Company, hereinafter called Arrow, to the consignee of such freight at the time of investigation by commission investigators. Plaintiff has a contract with Arrow to handle and carry freight, his compensation is a percentage of the charge made by Arrow. He has no other contract. Arrow's business, as testified to by its general manager, is the gathering of freight from wholesalers and reassembling it for shipment to retailers throughout the area of Iowa serviced by Arrow. It covers close to two thirds of the state. Arrow does not hold a contract carrier's permit or a certificate of convenience and necessity issued to motor carriers, nor does it own

any vehicles. All of the freight handled by Arrow is moved by contract carriers such as plaintiff. There are three movements of freight; first, from the wholesalers to Arrow's dock; second, a movement between docks and, third, a delivery of the freight to the ultimate consignee, the party who purchased the freight from the wholesaler.

In handling the freight Arrow uses a waybill in which it designates itself as "Consignor", the wholesaler is designated as "Reference", and the retailer to whom the freight is shipped as "Consignee."

At the time plaintiff was investigated, April 3, 1962, he as stated was making deliveries. At that time he had freight on board his truck from ten different wholesalers or "References", this is shown by his own testimony.

The commission specifically found, the "References" were the shippers, certain items of freight were on board plaintiff's truck April 3, 1962, and being transported for compensation, plaintiff was operating outside the scope of his permit in that he was with full knowledge carrying freight for shippers with whom he had no contracts, plaintiff was on April 3, 1962, transporting goods originating from more than five shippers, and the foregoing with other facts and circumstances in evidence constitute convincing evidence plaintiff in conjunction with Arrow was operating as a motor carrier without authority and in violation of his permit and such constituted just cause to revoke plaintiff's permit.

I. In argument plaintiff urges the evidence before the commission was insufficient in regard to proof of merchandise or freight on his truck, and as to who was the shipper of the freight. In this he overlooks his own testimony and that of Arrow's general manager. Their testimony clearly supports the findings and order of the commission. The real question for decision, as pointed out by the trial court, is, who is the shipper?

In the Wood and Sherman cases this question is treated as a fact question. In Wood, at pages 802, 803 of 253 Iowa, page 713 of 113 N.W.2d, we state:

"A vital question upon which the commission's ultimate de-

cision rested was whether the wholesalers or distributors from which plaintiff's driver picked up the goods found on his truck were the real shippers and Arrow was merely the nominal one. * * *

"If evidence supports the finding these eight or more companies were the real shippers, defendant's revocation order has substantial support."

Plaintiff contends Arrow, the freight forwarder, is the shipper to the exclusion of the wholesaler or "Reference." To sustain this contention we would have to hold as a matter of law the term "shipper" as used in section 327.1, subsection 5, excludes the wholesaler or "Reference." We believe this is untenable. To so hold would allow plaintiff in conjunction with Arrow and other contract carriers to operate in the same manner as motor carriers as defined in chapter 325 without obtaining a certificate of public convenience and necessity, section 325.6. This would defeat the legislative plan of the fields of activity of contract carriers and motor carriers set forth in chapters 325 and 327.

Section 327.1, subsection 5, in the last sentence thereof as it appears in the 1958 Code, next to the last in the 1962 Code, is in part, "goods originating from more than five shippers." The entire subsection was adopted at one time. There is no reason to believe the word "shipper" was used in the forepart of the subsection to mean other than the originating shipper. From the testimony of Arrow's general manager it is clear none of the freight handled by it at anytime was first placed in the stream of traffic by it but always by a wholesaler who wished merchandise delivered to a customer. The term "real shipper" is used in the Wood case in referring to the "References" and "nominal one" in referring to Arrow, the forwarder. In the authorities cited by plaintiff, Lehigh Valley Railroad Co. v. United States, 243 U. S. 444, 37 S. Ct. 434, 61 L. Ed. 839; Great Northern Railway Co. v. O'Connor, 232 U. S. 508, 34 S. Ct. 380, 58 L. Ed. 703; Merchants Warehouse Co. v. United States, 283 U. S. 501, 51 S. Ct. 505, 75 L. Ed. 1227, and Acme Fast Freight v. United States, 30 F. Supp. 968, treating a freight forwarder as a shipper, there is nothing holding the original shipper is

not a shipper. In none of those cases was a statute similar to ours under consideration. That the goods originated with the "References" see Davis v. Latham-Bradshaw Cotton Co., 185 N. C. 387, 117 S.E. 391, 393.

That the "References" not Arrow are the real or originating shippers is substantially supported by the testimony of Arrow's general manager. In fact no other inference is justified.

■ II. The foregoing disposes of plaintiff's contention there is not substantial evidence to support the findings of the commission except wherein he complains the commission acted arbitrarily and capriciously in finding he in conjunction with Arrow was operating as a motor carrier of freight. He contends the commission did not find appellant was operating for the public or between fixed termini or over a regular route. Such findings were necessarily included in the specific findings and order of the commission. The finding was plaintiff in conjunction with Arrow was operating as a motor carrier, not that he alone was so operating.

We do not believe plaintiff can be heard to say he did not know of Arrow's method of operation. He worked under contract with it since August of 1961. He had picked up merchandise as well as delivered it during this time. He had the waybills in his possession. And he certainly knew the shipments did not originate with Arrow. That he might have thought he was acting within his permit is immaterial.

As to public transportation, we said in the Circle Express Company case at pages 662, 663 of 249 Iowa, page 896 of 86 N.W.2d: "* * *, could it be found as an ultimate fact that the plaintiff conducted its business in such a manner as to induce the public to believe that it would receive for carriage and carry the goods of any person tendered to it for transportation over its regular routes, provided the goods were such as it holds itself out as willing to carry? If so, then the district court must uphold such findings and conclusions, * * *."

Arrow's general manager testified, "The * * * company * * * is involved in the gathering of merchandise, re-assembling of merchandise for shipment from wholesalers throughout the various areas of Iowa that Arrow Express Forwarding Company

offers service to. \* \* \* our service also includes delivering the merchandise. \* \* \* We cover close to two thirds of the state." Testifying concerning a statement on rate sheets he said, "The purpose of the heading is this: we have to offer something to the public and the wholesaler is very much interested in the type of services that can be offered him." Arrow has docks in Des Moines, Ogden and Waterloo. It has telephone service in Cedar Rapids, Fort Dodge and Mason City and provides a pickup service in those towns.

Plaintiff testified, "We have four routes out of Ogden. We load every morning and peddle one of the four routes and end up in Ogden. We all help each other load all four trucks." and, "There are four routes out of Ogden. I take one of these routes each day. There are 15 to 25 towns on each route. We would average 25 stops per day. We travel from 180 to 230 miles per day."

We believe it is apparent from the testimony of the general manager that Arrow holds out to the public consisting of wholesalers that it will handle freight in the area serviced, at least the evidence is such as the commission could so find. Circle Express Co. v. Iowa State Commerce Commission, 249 Iowa 651, 86 N.W.2d 888; and Arizona Corporation Commission v. Reliable Transportation Co., 86 Ariz. 363, 346 P.2d 1091, 1101.

The testimony of plaintiff is substantial evidence four regular routes are maintained by Arrow and its contract carrier. Plaintiff testified Arrow directs his transportation activities and the general manager testified all Arrow's freight was moved by contract carriers. The evidence of regular routes is as strong as that in the second opinion in State ex rel. Board of Railroad Commissioners v. Lischer Brothers, 223 Iowa 588, 272 N.W. 604.

Plaintiff and Arrow together with other contract carriers can from the foregoing evidence be properly found to be operating as a motor carrier.

Plaintiff also argues such cannot be found from one day's activities, here again plaintiff overlooks his testimony and that of Arrow's general manager. The whole tenor of their testimony is in regard to the general course of the business carried on by

them, not only on April 3, 1962, but it covers the time plaintiff has been under contract to Arrow.

■ III. Plaintiff contends this sentence, "The presence of goods originating from more than five shippers on one vehicle at any one time shall be prima-facie evidence that the carrier is a motor carrier and not a contract carrier.", in subsection 5 of section 327.1 is unconstitutional. His contention is the above sentence converts a private carrier into or compels it to become a common carrier and thus is violative of the due process clause of Amendment 14 of the United States Constitution in that it amounts to taking private property for a public use without just compensation.

We believe plaintiff misconceives the purpose and import of the quoted sentence. The action of the commission here was not to compel plaintiff to obtain a certificate of convenience and necessity required of motor carriers, nor was it to punish him criminally for operating without such certificate, but it is to prevent him from operating as a common carrier while posing as a private or contract carrier. To assist the commission to decide and resolve such questions the legislature in the above sentence has merely set up the standard of proof to make a prima facie case of a contract carrier operating as a motor carrier. The burden of going forward with the evidence to prove he is not a motor carrier is cast upon plaintiff when the evidence shows he has goods originating from more than five shippers on one vehicle at any one time. The sentence merely shifts the burden of proof to the one in possession of the facts to show the true nature of the activity carried on. This type of burden of proof statute to assist the trier of fact is not uncommon. At least six states, Arizona, Arkansas, Connecticut, Louisiana, Oregon and Virginia, have similar statutes. Some states reach the same result by rule of the commission. See "Common or Contract Carrier?—The 'Circle' Circle", 47 Iowa Law Review 637, 662, 663. Arizona and Louisiana have so interpreted their statutes, Kemper, Inc., v. Louisiana Public Service Commission, 235 La. 1035, 106 So.2d 460, 463; and Arizona Corporation Commission v. Reliable Transportation Co., 86 Ariz. 363, 346 P.2d 1091, 1098, 1100.

Plaintiff relies principally upon Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Frost v. Railroad Commission of State of California, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; and Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264. In addition he cites a number of state authorities following the three cited cases. These cases do not deal with a statute similar to the one under consideration. In the Duke case a Michigan statute provided, " 'Any and all persons * * * engaged * * * in the transportation of persons or property for hire * * * shall be common carriers * * *.' " Page 574 of 266 U. S., Page 192 of 45 S. Ct. In the Frost case a California statute as construed by the state supreme court was held to have the effect of offering a special privilege of using the public highways to the contract carrier upon condition he dedicate his property to the public use of public transportation. Page 591 of 271 U. S., page 606 of 46 S. Ct. In the Smith case a Florida statute under consideration included both private carriers for hire and common carriers in the same definition and put them on the same footing. Pages 557 and 563 of 283 U. S., pages 583 and 585 of 51 S. Ct. Such statutes were held unconstitutional. However, in the Frost case Justice Sutherland pointed out the right of the state to declare and regulate a carrier's operation, as follows, at pages 599, 600 of 271 U. S., page 609 of 46 S. Ct.:

"The court below seemed to think that, if the state may not subject the plaintiffs in error to the provisions of the act in respect of common carriers, it will be within the power of any carrier, by the simple device of making private contracts to an unlimited number, to secure all the privileges afforded common carriers without assuming any of their duties or obligations. It is enough to say that no such case is presented here; and we are not to be understood as challenging the power of the state, or of the railroad commission under the present statute, whenever it shall appear that a carrier, posing as a private carrier, is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly."

The commission states the above from the Frost case

states its position and cites Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721, wherein Texas statutes providing for the regulation and licensing of both common and contract carriers were held valid. These statutes were not dissimilar to the plan of our chapters 325 and 327 in their overall aspect to regulate common and contract carriers in the public interest. They did not contain a provision similar to the one under consideration here. The court at page 265 of 287 U. S., page 185 of 53 S. Ct. said: "We are of opinion that neither by specific provision or provisions, nor by the statute considered as a whole, is there an attempt to convert private contract carriers by motor into common carriers. Certainly, the statute does not say so."

That is true of the provision under attack here. It merely deals with the burden of proof. When under this provision the burden was cast on plaintiff the evidence produced by him was such the commission could properly find he had not carried such burden, in other words, his evidence did not show he was operating as a contract carrier.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.