CEDAR RAPIDS STEEL TRANSPORTA-
TION, INC., Appellee,

and

Amana Refrigeration Company et al.,
Intervenor-Appellee,

v.

IOWA STATE COMMERCE COMMISSION,
Bernard J. Martin, Frank B. Means and
Dick A. Witt, Commissioners thereof, Appellants,

H & W Motor Express Company and The
Rock Island Motor Transit Company, Intervenors-Appellants.

No. 53031.

Supreme Court of Iowa.

Sept. 5, 1968.

Rehearing Denied Nov. 12, 1968.

Leo J. Steffen, Jr., Commerce Counsel, and Daniel J. Fay and Susan Thomas, Assistant Commerce Counsel, Des Moines, for appellants.

D. C. Nolan, Iowa City, for intervenor-appellant, H & W Motor Express Co.

Gamble, Riepe, Martin & Webster, Des Moines, for intervenor-appellant, The Rock Island Motor Transit Co.

Robert R. Rydell, Des Moines, and John C. Eichhorn, Cedar Rapids, for appellee.

Clinton H. Moyer and Wm. A. Bergman, Cedar Rapids, for intervenors-appellees, Amana Refrigeration, Inc., The Chandler Co., Cedar Rapids Pump & Supply Co., Hughes Bros. Co.; Altofer Machinery Co.

RAWLINGS, Justice.

Defendant, Iowa State Commerce Commission, ordered plaintiff truck operator permittee to cease unlawful conduct of business, followed by order revoking permit. Plaintiff's two separate district court actions, each seeking relief by certiorari and injunction, were consolidated for trial. Defendant appeals from trial court's decree annulling both orders and enjoining their enforcement.

For convenience, plaintiff, Cedar Rapids Steel Transportation, Inc., and defendant, Iowa State Commerce Commission, will sometimes hereafter be referred to as petitioner, or permittee, and respondent, or defendant commission, respectively. In addition we shall disregard the fact individual commission members are also made defendants.

Petitioner holds a "truck operator permit" issued by respondent.

Incidentally, though not here relevant, petitioner also possesses a certificate issued by Interstate Commerce Commission classified as interstate irregular route radial authority.

Defendant commission caused permittee's operations to be investigated. There followed adoption of a resolution and giving of notice September 27, 1963, for permittee to appear and show cause why its truck operator permit should not be revoked.

Hearing was accordingly held commencing October 15, 1963. From evidence presented defendant commission found, in substance, since 1963 permittee had, (1) been actively soliciting intrastate traffic; (2) been operating between fixed termini; (3) been operating over relatively regular routes; (4) made regular customer stops for shipments, in some instances five days every week, with no shipper pickup-calls having been made; (5)

charged uniform rates; and (6) rarely refused shipments.

Upon this basis defendant commission issued an order, March 9, 1964, to the effect permittee cease and desist operating as a motor carrier between fixed points in Iowa.

Subsequently another investigation was made as to conduct of permittee's trucking business. May 13, 1964, defendant commission by resolution ordered permittee again appear and show cause why its permit should not be revoked. Upon notice given, permittee appeared and hearing was later held.

June 1, 1964, petitioner, by district court action, sought relief by certiorari, and injunction, from the aforesaid cease and desist order. Respondent made return and answered.

Evidence presented at the second revocation hearing revealed permittee's modes and methods of operation, disclosed at the first commission hearing, had not been discontinued. In fact its original terminal at Cedar Rapids had been supplemented by establishment of one in Davenport.

December 21, 1964, defendant commission ordered revocation of permittee's state issued truck operator permit.

January 7, 1965, petitioner filed its second action in district court, this time asking a writ of certiorari issue and injunctive relief be granted relative to respondent's permit revocation order. Again respondent made return and answered.

As heretofore disclosed the two cases brought by petitioner were consolidated and tried to the court upon the transcript of testimony heard by defendant commission, with other explanatory evidence presented. Rule 315, Rules of Civil Procedure.

Decree issued by trial court vacated both of respondent's challenged orders, and permanently enjoined their enforcement. The two cases are likewise consolidated for purpose of this appeal.

Respondent contends trial court erred in, (1) holding petitioner was lawfully operating under a state truck operator permit as an irregular route carrier; (2) finding respondent, in issuing the cease and desist, and revocation orders, acted arbitrarily, capriciously, unlawfully, and without foundation; and (3) reviewing de novo respondent's orders and in granting injunctive relief.

These assigned errors will not be dealt with in the order presented.

I. Examination of petitioner's pleadings discloses, in both cases, relief sought by it is basically that obtainable in certiorari, aided by injunctive relief as an auxiliary remedy. See rules 306–330, R.C.P.

■ However, trial court held, Code section 474.28 permitted a de novo review of the challenged orders issued by respondent. We do not agree.

The aforesaid statute is clearly confined to "any railroad" aggrieved by a rule, order or regulation made by defendant commission. Petitioner fails to so qualify.

Furthermore, Code section 327.4 neither expressly nor impliedly serves to afford appellate relief or de novo review of any rule, order or regulation issued by respondent. It provides: "All control, power, and authority over railroads and railroad companies, motor vehicles and motor carriers now vested in the commission, insofar as the same are applicable, are hereby specifically extended to include truck operators and contract carriers." If the legislature had intended this act be extended to accord truck operators and contract carriers all appellate rights and remedies granted railroads and railroad companies relative to any rule, order or regulation issued by the commerce commission it could easily have so declared. This it did not do.

To give section 474.28 the construction accorded it by trial court, would require reading into that statute an intent and meaning not therein expressed. The courts of this state do not possess any such prerogative. See Bergeson v. Pesch, 254 Iowa 223, 227–229, 117 N.W.2d 431.

Petitioner asserts State ex rel. Board of Railroad Com'rs v. Holdcroft, 207 Iowa 564, 221 N.W. 191, by analogy, upholds trial court's appellate review of the cases at bar. No useful purpose will be served by an extended analysis of the facts and holding in the cited case. There we were dealing with the right of defendant commission's predecessor to enforce its orders by invocation of judicial action. We find in it no semblance of support for the position here taken by petitioner.

Moreover, section 327.4, quoted supra, is clearly confined to the matter of control, power and authority by defendant commission over motor vehicles and motor carriers operating within the state. See State ex rel. Board of Railroad Com'rs v. Holdcroft, supra. As aforesaid, it does not extend remedial rights or review by appeal to any contract carrier or truck operator aggrieved by a commission adjudication and we cannot read such intent and purpose into the law. See Bergeson v. Pesch, supra.

Without question right of appeal is purely a creature of statute. Carmichael v. Iowa State Highway Commission, Iowa, 156 N.W.2d 332, 335; Merritt v. Interstate Power Co., Iowa, 153 N.W.2d 489, 492; and 2 Am.Jur.2d, Administrative Law, section 557, page 366.

And a search of Code chapter 327 fails to reveal appellate review is provided truck operators or contract carriers desiring to challenge an adjudicatory order issued by the state commerce commission.

In addition Code section 325.21 is not here applicable. In the first place it applies only to certificated or motor carriers. Next, it merely provides right of appeal from denial by the commerce commission of an application for certificate of convenience and necessity. At the same time, existence of this statutory enactment serves to disclose the significance attendant upon omission of any appellate rights in chapter 327 of the Code.

We now hold Code section 474.28 is not here applicable.

II. On the other hand, absence of statutory right of appeal does not serve to deprive petitioner of any judicial review. See rule 306, Rules of Civil Procedure, and Appanoose Co. R. Taxpayers Assoc. v. Iowa State Tax Comm., Iowa, 158 N.W.2d 176, 182.

As we said in Hohl v. Board of Education, 250 Iowa 502, 508–509, 94 N.W.2d 787: "Certiorari is the method of bringing the record of an inferior tribunal before the court for the purpose of ascertaining whether the inferior tribunal or body had jurisdiction and whether its proceedings were authorized. See 19 Iowa Law Review 467. Clearly it comes within the supervisory functions of the appellate courts and is necessary to keep all such bodies within their proper functions and to prevent them from acting in an illegal manner. It is an extraordinary remedy, and the courts may make it *available to all persons* who may show a substantial interest in the matter challenged. (Authorities cited.)

"The writ of certiorari is distinguishable from appeal in that certiorari prevents the body performing or exercising a judicial or quasi-judicial function from violating principle of jurisdiction or exceeding the scope of its authority, while appeal is aimed to relieve the individual litigant substantively or from mistake in applying adjective law. Where the body has jurisdiction to determine a question of fact, it is emphatically stated that the writ is not a substitute for appeal, and of course that question is not a ground for certiorari. (Authorities cited.)"

■ Dealing with a procedural situation not unlike that involved in the cases at bar, we said in Circle Exp. Co. v. Iowa State Commerce Comm., 249 Iowa 651, 653–654, 86 N.W.2d 888, 890: "It is not the duty of the court to review findings of fact by the lower tribunal having jurisdiction, if sustained by any competent and substantial evidence (unless of course it otherwise acted illegally), *and the court should only examine the evidence submitted to determine whether there is any competent and substantial evidence to support the findings.* (Authorities cited.)" (Emphasis supplied) See also rules 306, 315, 317 R.C.P.; Staads v. Board of Trustees, Iowa, 159 N.W.2d 485, 490; Koelling v. Board of Trustees of Mary Frances Skiff Memorial Hospital, 259 Iowa 1185, 1206, 146 N.W.2d 284; Wood v. Iowa State Commerce Commission, 253 Iowa 797, 801–803, 113 N.W.2d 710; and 14 Am.Jur.2d, Certiorari, sections 63–67, pages 829–833.

■ As stated in Powers v. McCullough, 258 Iowa 738, 741, 140 N.W.2d 378: " * * * a trial de novo is not permitted on certiorari and only questions of law are presented."

Additionally the burden is on respondent to show petitioner exceeded its jurisdiction or otherwise acted illegally. Smith v. City of Fort Dodge, Iowa, 160 N.W.2d 492, opinion filed July 18, 1968, and citations; Sueppel v. Eads, Iowa, 156 N.W.2d 115, 117; and Mangan v. Department of Public Safety, 258 Iowa 359, 364, 138 N.W.2d 922.

Petitioner's actions stand in certiorari and trial court erred in reviewing de novo respondent's "cease and desist" and "revocation" orders.

III. Turning now to the matter of applicable substantive law, an examination of relevant statutes discloses no precise definition of a "truck operator". However, the rights and privileges accorded by law to any such permittee are, by exclusion, reasonably determinable.

What is now designated as Code chapter 325 is confined to certificated or motor carriers. To the extent here relevant it first appeared as chapter 252–A1, Code, 1927. Sections 5105–a6 of that act stated: "It is hereby declared unlawful for any motor carrier to operate or furnish public service within this state without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation."

In 1953 the Fifty-Fifth General Assembly amended this law to provide: "It is hereby declared unlawful for any motor carrier to transport over a regular route or between fixed termini any person or property, for compensation, from any point or place in the state of Iowa to another point or place in said state irrespective of the route, highway or highways traversed, including the crossing of any state line of the state of Iowa, or the ticket or bill of lading issued and used for such transportation, without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation." See section 325.6, Codes, 1954, 1958 and 1962.

Amendments in 1959 and 1963 relative to carriers of passengers operating on charter are not here involved. See Acts of the Fifty-Eighth General Assembly, chapter 248, section 2, and Acts of the Sixtieth General Assembly, chapter 213, section 1.

During all this period of time the definitive provisions of Code sections 325.1 and 327.1 remained the same.

When in 1953, the legislature enacted that amendment quoted supra, the intent must have been to effect a change in existing law. As we said in Consolidated Freightways Corp. of Delaware v. Nicholas, 258 Iowa 115, 125, 137 N.W. 2d 900, 907: "Usually when an amendment is adopted, it is presumed the legislature intended to make a change in the

existing law, and courts will therefore endeavor to give some effect to the amendment."

Significantly one material change effected by the aforesaid amendment was that of making it unlawful for other than a certified carrier to transport persons or property over a regular route or between fixed termini from any point or place in Iowa to another point or place in the state, irrespective of the highway or highways traversed.

■ Briefly stated, this means those engaging in transportation for compensation over a regular route or between fixed termini, are required to obtain a certificate of public convenience and necessity.

As the author of an article in 33 Iowa L.Rev. 315, 316, said: "Whether the carrier operates between fixed termini, or over a regular route, determines whether it is subject to the more stringent provisions of the certificated motor carrier law, which require the carrier to obtain a certificate of public convenience and necessity."

Next, Code section 327.1(5) states: "The term 'contract carrier' shall mean any person who does not hold out to the general public to serve it indiscriminately and who, for compensation, engages in the business of transportation of property by motor truck under individual written contracts, thereby providing a special and individual service required by the peculiar needs of a particular shipper, but does not include, (1) a motor carrier as defined in chapter 325, (2) a truck operator, or (3) a person whose transportation by motor vehicle is in furtherance of a private enterprise other than the business of transportation for others for compensation." See also Circle Exp. Co. v. Iowa State Commerce Comm., 249 Iowa 651, 86 N.W.2d 888.

■ Under existing statutes it must be conceded a truck operator permittee is neither a certificated nor contract carrier.

Now, with regard to truck operators, section 327.1 provides, in material part:

"1. The term 'motor truck' shall mean any automobile, automobile truck, or other self-propelled vehicle, including any trailer, semi-trailer, or other device used in connection therewith, not operated upon fixed rails or track, used for the public transportation of freight for compensation, not operating between fixed termini, nor over a regular route, or used in connection with the transportation of property for compensation under an individual written contract.

"2. The term 'truck operator' shall mean any person operating any motor truck or motor trucks upon any highway in this state.

"3. The term 'highway' shall mean every street, road, bridge, or thoroughfare of any kind in this state."

In Circle Exp. Co. v. Iowa State Commerce Comm., supra, loc. cit., 249 Iowa 660, 86 N.W.2d 894, this court stated: "Encroachment by contract carriers in the field of service rendered by common [certificated] carriers, whether by design or subterfuge, cannot be permitted."

■ By the same token a truck operator permittee cannot engage in any function, service or transportation restrictively performable under the law by either a certificated or contract carrier.

IV. The main thrust of the question now posed relates to the functional difference between a certificated or motor carrier on one hand, and a truck operator on the other.

We said in State ex rel. Board of Railroad Com'rs v. Ooten, 215 Iowa 543, 544, 243 N.W. 329: "The distinction made as between the two kinds of operators is one that can become exceedingly difficult of practical application. A truck operator who operates between fixed termini and on a regular route is readily identified. But when one operates upon any and all

routes, and between any and all termini, it becomes a question of degree whether sooner or later his business may not concentrate upon a regular route and two fixed termini."

In several other cases this court has been called upon to deal with the problem at hand. As a result it appears some general criteria have been established which, though in no one instance alone controlling, may be helpful in determining whether a motor truck is operating between "fixed termini or over a regular route". Has the operator, (1) advertized or solicited business, or carried only when called; (2) made more or less regularly scheduled trips, or carried only according to call; (3) made trips between different termini on the basis of calls received, or were the termini generally established, declared, or commonly known; (4) used different routes according to calls received, or were generally established and commonly known routes used with reasonable regularity; (5) established regular or commonly known, fixed, or terminal rates, or made variable charges according to loading and unloading time, weight, volume, distance, etc.; (6) usually and customarily accepted all goods for transit, or refused to carry in any substantial number of instances; (7) adopted standing and more or less regular pickup arrangements, either oral or written, with shippers at any given termini, or picked up freight and hauled only on the basis of calls received.

Of course, all these elements need not be present or shown to exist before an operator can be said to be transporting goods between fixed termini or over a regular route. If in fact it be established a truck operator is engaging in the transportation of property for hire in accord with generally predetermined and commonly known plans or arrangements, between generally established and commonly known fixed points or termini, with more or less regularity or over a generally established and commonly understood regular route, he may then ordinarily be said to be operating between fixed termini or over a regular route.

With regard to the foregoing see Circle Express Co. v. Iowa State Commerce Commission, 249 Iowa 651, 86 N.W.2d 888; State ex rel. Board of Railroad Com'rs v. Lischer Bros., 223 Iowa 588, 272 N.W. 604; State ex rel. Board of Railroad Com'rs v. Thompson, 217 Iowa 994, 252 N.W. 256; State ex rel. Board of Railroad Com'rs v. Lischer Bros., 215 Iowa 607, 246 N.W. 264; State ex rel. Board of Railroad Com'rs v. Mercer, 215 Iowa 611, 246 N.W. 406; 47 Iowa L.Rev. 637; and 33 Iowa L.Rev. 315, 316.

V. The facts here presented are understandably somewhat involved, and in some instances controverted. However, evidence emanating from both hearings conducted by defendant commission resulting in the cease and desist, and revocation orders, is basically the same. When summarized, the record reveals the factual situation to be substantially as follows: Petitioner operates intrastate under a truck operator permit, its principal place of business being in Cedar Rapids.

Statements from some of petitioner's customers and drivers were obtained and its intrastate operations for the quarterly periods June, July, August and September, 1963, and for February, March, April, May and June, 1964, were abstracted in the course of investigations conducted by the motor transportation division of the Iowa State Commerce Commission.

Among customers to contacted were Firestone Tire and Rubber of Des Moines, Pittsburg Plate Glass, Goodyear Tire and Rubber of Des Moines, and Cities Service Oil Corporation. Testimony presented by officers of these concerns discloses they were first contacted by petitioner's representatives and advised, usually with reference to a map, as to the

area in eastern Iowa served by petitioner; that subsequent to these initial contacts, petitioner's trucks stopped every weekday morning at the Pittsburg Plate Glass and Goodyear Tire establishments, and at Firestone and Cities Service every afternoon. It was also revealed, these concerns never called petitioner relative to shipments to be made, but as a matter of custom and practice its trucks stopped regularly five days a week for a pickup or shipments, if any, to be made. The same witnesses also stated petitioner never refused any of their shipments, but they did understand deliveries in the Knoxville-Creston area were not desired.

Furthermore, evidence obtained from one of petitioner's drivers disclosed he seldom deviated from the route which took him over the interstate highway, and highways 6, 30 and 149, five days every week.

Petitioner, through its president Herald Smith, and others, testified to the effect it had interstate authority to operate within a 100 mile radius of Cedar Rapids on an irregular route basis. Mr. Smith said petitioner insisted on calls to its offices for pickup service. He also stated petitioner generally had a truck going every day to the Clinton-Davenport-Keokuk area and one going in the general direction of Decorah, Davenport and Dubuque, as well as from Cedar Rapids to Des Moines. His testimony further reveals that since receiving interstate authority petitioner had been actively soliciting intrastate traffic within the area of its Iowa interstate operations but at no time did it engage in advertising.

By virtue of the foregoing defendant commission issued the challenged cease and desist order. In so doing it found permittee to be, "operating as a motor carrier of property for compensation without authority from this Commission to several points within a 100 mile radius of Cedar Rapids, Iowa. This type of operation is particularly evident from Cedar Rapids on one hand to Waterloo, Des Moines, Nevada, Oelwein, Marshalltown and Decorah on the other hand. The Commission further finds that the respondent has endeavored to create a regular route operation and has invited the public to apply for its services between certain points in Iowa. Although the respondent [permittee] claims that it is its duty to serve the public indiscriminately to all points within a 100 mile radius of Cedar Rapids, the results of its operation points clearly to a scheduled service between fixed points. The Commission further finds that the respondent [permittee] is holding itself out to transport property for compensation over relatively regular routes between other points in the confined area provided that its service can meet the needs and requirements of the shipping public."

Petitioner was thereupon ordered to, "cease and desist from performing a motor carrier service as defined in Chapter 325, Code of Iowa, 1962, between fixed points in Iowa in which it is now rendering this service." No application for rehearing was ever filed.

As previously stated the subsequent or second hearing disclosed petitioner had not so altered operations as to bring it within the terms of the cease and desist order, but had in addition acquired another terminal in Davenport.

Defendant commission accordingly found petitioner was operating in violation of its truck operator permit and issued the controverted revocation order.

We are satisfied there is substantial, competent evidence disclosing petitioner, (1) solicited intrastate business for the limited area of its interstate authority; (2) seldom operated on call, its practice being to regularly stop at customer points for anticipated shipments; (3) made commonly known daily trips between Cedar Rapids, Des Moines, Waterloo and Davenport; (4) made more or less commonly known and regular trips between Cedar

Rapids, Nevada, Oelwein, Marshalltown and Decorah; (5) maintained two terminals, one in Cedar Rapids, the other in Davenport; (6) used regular and commonly known daily routes; (7) had an established understanding with certain customers to stop daily for possible shipments.

This in turn means there is substantial and competent evidence supporting both the cease and desist and the revocation orders issued by respondent. Trial court erred in holding to the contrary.

■ VI. However, petitioner claims, and trial court agreed, respondent acted arbitrarily, unreasonably and capriciously in that it, at least in part, relied upon undisclosed results of independently conducted prehearing investigations in finding petitioner's operations were in violation of its truck operator permit. We find no merit in this proposition.

In support of its position petitioner cites and leans heavily on In re Lone Tree Community School District, 260 Iowa 719, 150 N.W.2d 637. But that case is readily distinguishable on both facts and law. There the department of public instruction, a supervisory administrative agency, conducted a post-hearing survey, never disclosed to interested parties, and for the most part based its ultimate quasi-judicial decision on facts accordingly revealed. Furthermore, there existed no statutory authorization for any such investigation. We held information obtained by virtue of such a spurious post-hearing survey could not be used as the basis for any quasi-judicial decision.

The cases at bar stand on an entirely different footing. By statute defendant commission, a regulatory body, is authorized to at any time conduct investigations relative to operational procedures and activities of all truck operator or contract carriers. Code sections 474.18; 474.20; 327.2; and 327.4. See also Arrow Exp. Fwdg. Co. v. Iowa State Commerce Comm., 256 Iowa 1088, 1092–1094, 130 N.W.2d 451; 73 C.J.S. Public Administrative Bodies and Procedure §§ 81–83, pages 406–407; and 1 Am. Jur.2d, Administrative Law, sections 85–91, pages 880–890.

Also, the record before us is replete with evidence obtained in the course of the prehearing investigations. In addition petitioner was allowed reasonable opportunity to cross-examine all persons called as witnesses, including investigating officers, and to offer any evidence it desired. Petitioner was accorded every reasonable opportunity not only to meet, overcome, refute, explain or rebut all adverse testimony, but also to present any evidence favorable to its position. Full play was accorded our commonly accepted judicial practices in adversary proceedings. In this regard see Koelling v. Board of Trustees of Mary Frances Skiff Memorial Hospital, 259 Iowa 1185, 1197–1198, 146 N.W.2d 284, and 2 Am.Jur. 2d, Administrative Law, sections 413–426, pages 223–237.

Petitioner does point with some degree of emphasis to the fact respondent, in its findings attendant upon both orders here in dispute, referred to evidentiary matters, "and other things of which it had knowledge".

This, it must be conceded, is an inappropriate and unfortunate choice of words, presumably lifted from our opinion in the case of In re Application of Illinois Central Railroad Co., 241 Iowa 333, 338, 41 N.W.2d 98. But we were there dealing with the matter of hearing in connection with an application for a certificate of convenience and necessity, which is far removed from quasi-judicial proceedings relative to cease and desist or revocation orders. While use of the quoted or similar phraseology is disapproved in cases such as those at bar, we are satisfied it was here of little or no significance. In other words, it may constitute error, but under existing circumstances does not justify relief in the case at bar. See United States v. Pierce Auto Freight Lines, 327 U.S. 515, 527–531, 66 S.Ct. 687, 694–695, 90 L.Ed. 821; 73 C.J.S. Public Administrative Bodies and Pro-

cedure § 152, page 485; 2 Am.Jur.2d Administrative Law, section 445, page 254, and Annos. 18 A.L.R.2d 552.

VII. Trial court also found the record of proceedings, as a whole, disclosed bias on the part of defendant commission and upon that basis held it had acted arbitrarily and capriciously.

This blanket indictment makes it rather difficult to ascertain with any degree of certainty the exact premise upon which trial court based such holding.

■ At the outset, a rebuttable presumption of regularity and impartiality attends all official actions of defendant commission. Code section 622.56; State v. Rivera, 260 Iowa 320, 149 N.W.2d 127, 131; City of Cherokee v. Illinois Cent. R. Co., 157 Iowa 73, 77, 137 N.W. 1053; 73 C.J.S. Public Administrative Bodies and Procedure § 145, page 478; and 2 Am.Jur.2d, Administrative Law, sections 750–751, pages 650–653.

In an apparent effort to overcome this presumption petitioner, on appeal, makes reference to the fact that in a limited number of instances members of defendant commission interrupted proceedings before it to ask questions, comment upon applicable law, or to explain the reason for rulings on evidence offered.

■ Nothing is to be gained by setting forth the questions and statements to which petitioner alludes. It will suffice to point out, this court has repeatedly held, in similar instances, no bias or resultant prejudice appears. State v. Ladehoff, 255 Iowa 659, 671, 122 N.W.2d 829, and Scroggs Feed & Grain Co. v. Vos, 254 Iowa 620, 622–623, 118 N.W.2d 543. See also 88 C.J.S. Trial §§ 49–50, pages 124–137; and 53 Am.Jur., Trial, section 79, page 77.

■ Additionally trial court held, respondent acted illegally and in excess of its jurisdiction by proceeding against petitioner as the result of self-initiated investigations.

As heretofore revealed respondent is by law granted broad investigatory powers.

It is also accorded specific authority to suspend or revoke and cancel the permit held by any truck operator or contract carrier. Code sections 327.16 and 327.21; Peterson v. Iowa State Commerce Commission, 256 Iowa 964, 966, 129 N.W.2d 656; Arrow Exp. Fwdg. Co. v. State Commerce Comm., 256 Iowa 1088, 1096, 130 N.W.2d 451; Sherman v. Iowa State Commerce Commission, 253 Iowa 776, 113 N.W.2d 715; and Wood v. Iowa State Commerce Commission, 253 Iowa 797, 113 N.W.2d 710.

In connection with any investigation effected by it, defendant commission must, of necessity, evaluate resultant findings in order to determine whether further proceedings relative to questionable conduct on the part of a permittee should be initiated. This, perforce, requires some degree of predetermination as to law, facts and policy.

■ On the other hand it is axiomatic, an administrative hearing with reference to suspension or revocation of a truck operator or contract carrier permit must be a fair one. Any such permittee is entitled to a hearing conducted in an impartial manner. Morgan v. United States, 304 U.S. 1, 14–15, 58 S.Ct. 773, 775, 82 L.Ed. 1129, and Turnis v. Board of Education, 252 Iowa 922, 930, 109 N.W.2d 198.

■ However, a "fair day in court" is not defeated by the fact the hearing is before the same administrative authority which lawfully conducted a prehearing investigation or preferred charges. Federal Trade Commission v. Cement Institute, 333 U.S. 683, 700–703, 68 S.Ct. 793, 803–804, 92 L.Ed. 1010; Koelling v. Board of Trustees of Mary Frances Skiff Memorial Hospital, 259 Iowa 1185, 1202–1205, 146 N.W.2d 284; 73 C.J.S. Public Administrative Bodies and Procedure § 132, page 456, and § 136, page 461; 2 Am.Jur.2d, Administrative Law, sections 410–412, pages 220–223; and Annos. 97 A.L.R.2d 1210, 1215.

■ The question now posed is whether the record as a whole discloses members of defendant commission entertained such bias toward petitioner that it was not accorded a fair hearing.

As here employed the term "bias" means adverse, preconceived mental attitude or disposition, toward a party to a controversy, of such weight and nature as to materially impair or destroy that impartiality essential to a fair hearing. It does not relate to views entertained regarding the subject matter involved and, though the words are sometimes used interchangeably, "bias" is not here deemed synonymous with prejudice. A man is not ordinarily prejudiced against another without being biased, but he may be biased without being prejudiced. In this regard see Bethlehem Steel Co. v. National Labor Relations Board, 74 App. D.C. 52, 120 F.2d 641, 651–652; In re Adoption of Richardson, 251 Cal.App.2d 222, 59 Cal.Rptr. 323, 331; Ensher, Alexander & Barsoom, Inc. v. Ensher, 225 Cal.App.2d 318, 37 Cal.Rptr. 327, 329; State ex rel. Mitchell v. Sage Stores Co., 157 Kan. 622, 143 P.2d 652, 654–655; Davis, Administrative Law Text, Hornbook Series, chapter 12, pages 215–224; and Black's Law Dictionary, Fourth Ed., page 205.

And as stated in A. O. Smith Corporation v. N. L. R. B. (7 Cir.), 343 F.2d 103, 110: " ' * * * Bias or prejudice or hostility becomes a justiciable issue only as it bears on the fairness of the hearing. It cannot be imputed to the fact-trier retroactively, as it were, because his mind has absorbed the impressions left by a full and fair hearing.' (Authorities cited.)" See also Annos. 97 A.L.R.2d 1210, 1213.

A review of the record as a whole fails to reveal any evidence supporting trial court's finding to the effect respondent was biased.

■ VIII. Although defendant commission's authority to issue a cease and desist order is not challenged we are persuaded the power to alter, amend or revoke a truck operator permit includes the lesser right to direct a desistance of any unlawful or prohibited practice. See 2 Am.Jur. 2d, Administrative Law, section 467, page 279.

Be that as it may, trial court held respondent acted capriciously, arbitrarily, and without support in the record in the issuance of its March 9, 1964, cease and desist order.

This holding appears to be foundationed upon the premise the subject order fails to state with sufficient certainty the services or practices to be discontinued by petitioner.

■ In that regard an administrative agency is generally required, even apart from any statutory mandate, to make findings of fact on issues presented in any adjudicatory proceeding. 73 C.J.S. Public Administrative Bodies and Procedure § 139, page 464; 2 Am.Jur.2d, Administrative Law, section 447, page 256; and Davis, Administrative Law Text, Hornbook Series, sections 16.01–16.05, pages 292–296.

■ . Despite the fact no specific form need be employed in setting forth these findings and some degree of generalization is permissible, they must be sufficiently certain to, (1) enable a reviewing court to ascertain with reasonable certainty the factual basis and legal principle upon which the administrative officer or body acted, and (2) inform the parties of what they are required or permitted to do or are prohibited from doing. See 73 C.J.S. Public Administrative Bodies and Procedure § 140, page 466; 2 Am.Jur.2d, Administrative Law, section 455, page 266; and 2 Davis, Administrative Law Treatise, section 16.05, page 444.

However, the courts in various jurisdictions are not in complete agreement as to the nature of those findings which are required. Underlying facts, drawn immediately from the evidence, sometimes called specific, subordinate or evidentiary, are basic facts. On the other hand ultimate facts, while not bare conclusions or mere expressions of statutory standards, are

sequential, being determined by a process of reasoning and inference from basic facts. See 2 Am.Jur.2d, Administrative Law, section 456, page 269, and 2 Davis, Administrative Law Treatise, section 16.06, pages 451–454.

 Absent a specific statutory standard, rules governing the requirements and sufficiency of findings of fact by a trial court are generally held applicable to those of an administrative agency. See 73 C.J.S. Public Administrative Bodies and Procedure § 140, page 466.

 In that area we have held ultimate findings of fact will suffice. Futhermore, those findings are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt they will be construed to uphold rather than defeat the judgment. And, whenever from facts found others may fairly be inferred which will support the adjudication, such inference will be drawn. Schnabel v. Vaughn, 258 Iowa 839, 845–846, 140 N.W.2d 168; Rose v. John Deere Ottumwa Works, 247 Iowa 900, 907, 76 N.W.2d 756, and Van Riper v. Baker, 44 Iowa 450, 451.

 It is also generally understood, and this court has held, in the interpretation of an adjudicatory order the entire instrument must be considered, together with all the proceedings, in order to determine its intent and purpose. Schnabel v. Vaughn, supra, and 73 C.J.S. Public Administrative Bodies and Procedure § 143, page 475.

This brings us to the controverted cease and desist order quoted supra. Though not a model of clarity, this cessation edict meets essential standards of certainty.

 Construed in the light of the foregoing principles the challenged desist order served to generally advise petitioner it was to discontinue all *intrastate* activities reserved to certificated or motor carriers. Stated otherwise petitioner was told all its *intrastate* operations as a carrier of goods for compensation must be discontinued, (1)

between fixed and commonly known termini: (2) over more or less regularly established and commonly known routes. Construed as a whole the subject order was adequate.

By the same token it becomes evident the revocation order issued by defendant commission was sufficiently specific and definite.

IX. We conclude trial court erred in issuing the writs of injunction in both cases at bar and in setting aside, vacating and holding for naught the cease and desist, and revocation orders issued by respondent.

Both cases presented on this appeal must be accordingly reversed and remanded with instructions that trial court set aside the decree of injunction and judgment heretofore entered in each case adverse to defendant commission, and to enter in each case an appropriate decree or judgment dissolving any existing injunction, and annulling the writ of certiorari.

Both cases reversed and remanded with instructions.

All Justices concur.