Harold E. Haynes, appellant, v. Presbyterian Hospital Association, appellee.

No. 47745.

(Reported in 45 N.W.2d 151)

December 12, 1950.

John C. Gates, of Waterloo, for appellant.

Pike, Sias, Butler & Hoxie, of Waterloo, for appellee.

Hays, J.—This appeal presents a single question, namely, Is a charitable institution liable for damages for the negligence of its employees in administering the charity?

The facts are stipulated. Defendant, a corporation not for pecuniary profit, and organized under what is now chapter 504, Code of 1946, owns and operates the Presbyterian Hospital at Waterloo, Iowa. Plaintiff, while a paying patient therein, was injured through the alleged negligence of nurses there employed. Plaintiff seeks damages on account thereof. The trial court dismissed his petition and he appeals.

This is not a case of first impression, the identical issue having been before this court on two occasions. In both instances the decision was adverse to plaintiff's claim herein, and in accord with the ruling now before us. Appellant recognizes this fact but asserts that those decisions are not in accord with the modern trend and wrong in principle and asks that we re-examine the question.

The proposition was first before this court in the case of Mikota v. Sisters of Mercy, 1918, 183 Iowa 1378, 168 N.W. 219. There we recognized the great diversity of opinion among the courts on this question and the varied reasons upon which the immunity is based by those states granting the same. The *trust* theory, the *implied waiver* theory, the *nonapplicability of the respondeat superior* maxim, and the *public policy* theory were discussed. Without approving or disapproving any one of the various theories, we said at page 1382 of 183 Iowa, page 220 of 168 N.W.: "We think the great weight of authority is to the effect that an institution of this kind is exempted from liability to one who comes to it and accepts the benefits of its charity— to a patient receiving treatment—so far as liability is predicated on the negligence of its servants in administering the charity." The fact that plaintiff was a paying patient was deemed to be immaterial. Recovery was denied.

The general question of immunity of charitable institutions was next before this court in the case of Andrews v. Young Men's Christian Assn., 1939, 226 Iowa 374, 284 N.W. 186. The case differs from the instant one in that the plaintiff, a WPA worker working on the defendant's premises, was held not to be a beneficiary of the charity. Liability due to the negligence of defendant's employees was upheld. We will refer to this case later herein.

In Servison v. Young Men's Christian Assn., 1941, 230 Iowa 86, 87, 296 N.W. 769, the identical situation was again before this court. In a very brief opinion and with no attempt to analyze the question or the authorities, this court said, "Appellant cites a large number of authorities which we are not called on here to analyze. This case is ruled by Mikota v. Sisters of Mercy, 183 Iowa 1378, 168 N.W. 219, which sustains the ruling of a trial court." Liability was denied.

Thus in the two instances where this precise question has been before this court it has recognized the great diversity of opinion among the courts on this question, and likewise the varied and different reasons which have been assigned by the courts as a basis for granting immunity. It then accepted what it deemed to be the majority rule as the rule in Iowa without determining and adopting a specific basis or reason therefor.

In Andrews v. Y.M.C.A., supra, this court, Justice Bliss speaking, made an exhaustive analysis of the various theories, both pro and con, advanced by the different courts and denied the immunity claim. While the facts therein are different in that the plaintiff was held not to be a beneficiary of the charity, as in the instant case, it is clear that this court deemed the entire question of immunity to be before the court, as it said at pages 382, 383 of 226 Iowa, page 191 of 284 N.W.:

"The appellant claims the right to this exemption and bottoms the existence of this immunity upon all of the above stated theories, advocated as the foundation for it, to wit: (1) The trust fund theory; (2) The nonapplicability of the rule of respondeat superior to it; (3) The waiver theory; and (4) The public policy theory.

"It is thus apparent that the question of the immunity of a public charity institution for its negligence, in all of its relations, and in all of its phases, is before us."

The "trust fund" theory, the oldest and perhaps the Granddaddy of them all, is that the institution was created by donations for strictly charitable use. To make such funds subject to damages on account of the negligence of its employees is to deplete the funds and thwart the purpose of the donors.

The "nonapplicability of the respondeat superior maxim" theory is that the corporation, being not for pecuniary profit, receives no benefits from the work of its employees.

The "waiver" theory is that one who becomes a beneficiary of the charity does so with knowledge that the assets of the institution are not available in damages in the event of injury through the negligence of its employees.

The "public policy" theory is that it is deemed better for the public at large that the individual bear his injury, rather than that the institution should be liable in damages.

After a careful analysis of each theory it is said, again referring to the Andrews case, page 412: "The various doctrines which have been advocated in support of the immunity which we are considering, other than the public policy theory, have little of inherent or real merit to recommend them. They are but legal fictions which the courts have announced to make effective an immunity which they have conceived to be a demand of sound public policy." Thus in so far as immunity of charitable institutions for negligence of its employees is recognized in this state it is based on the *public policy* theory. While at page 384 we say: "The next question for determination is whether the deceased was a beneficiary of the charity * * * for if he was such a beneficiary, then that is an end of this case under the authority of the Mikota case, and of the majority of the authorities in this country", an examination of the authorities leads to the conclusion that the so-called "majority of the authorities" is indeed very slim. President and Directors of Georgetown College v. Hughes, 1942, 76 U. S. App. D. C. 123, 130 F.2d 810, and authorities therein set forth.

"Public policy" means simply that policy recognized by the state in determining what acts are unlawful or undesirable, as being injurious to the public or contrary to the public good. It is not quiescent but active. A policy adopted today as being in the public good, unlike the Ten Commandments, is not necessarily an ever-enduring thing. As times and prospectives change, so changes the policy. Public policy once forbade the sterilization of any individual; today, it is becoming more and more recognized and accepted as a benefit rather than an injury to society in the handling of certain types of individuals.

The basis of the immunity doctrine dates back to English law of 1846 and was first recognized in this country in 1876. The immunity, so far as it ever existed, has largely disappeared except as to so-called beneficiaries of the charity, and as to them the authorities are not at all agreed.

In Iowa, under the pronouncement in the Andrews case, there is no immunity if the injured party be deemed a stranger to the charity. Under the ruling in the Mikota and Servison cases, supra, immunity does exist if the injured party is deemed to be a beneficiary of the charity, and this is true whether he be a paying or nonpaying patient or beneficiary. To grant it in the one case and to deny it in the other is to reduce the theory to the ridiculous unless it be based on charity. Charity, as defined by Webster, means "Acts or works of benevolence to the poor."

No doubt at the outset of the theory the need for charity in the way of treatment of the suffering was urgent and the general good of society demanded encouragement thereof. At that time hospitals, being the particular so-called charity which we have before us, were relatively few in number and were created and conducted solely by funds donated by public spirited people. Their doors were open to all alike irrespective of race, color, creed or ability to pay. There was little, if any, paternal care granted by the state. The granting of immunity from liability for the negligence of their employees may have been proper as a basis for encouraging such charity.

Today the situation is vastly different. The business of the hospitals of today has grown into an enormous one. They own and hold large assets, much of it tax free, by statute, and employ many persons. The state has become paternal to an astonishing degree, as evidenced by numerous statutes found in our Code, such as chapter 250, Relief for Soldiers, Sailors, and Marines; chapter 252, Support of the Poor; chapter 253, County Homes; chapter 254, Tuberculous Patients; chapter 255, Medical and Surgical Treatment of Indigent Persons. Also we take judicial notice of the extensive use of the many types of hospital insurance, as well as liability insurance by the institutions. Thus it is evident that times have changed and are now changing in

the business, social, economic and legal worlds. The basis for and the need of such encouragement is no longer existent.

The law's emphasis generally is on liability, rather than immunity, for wrongdoing. Charity is generally no defense. It is for the legislature, not the courts, to create and grant immunity. The fact that the courts may have at an early date, in response to what appeared good as a matter of policy, created an immunity does not appear to us a sound reason for continuing the same when under all legal theories it is basically unsound, and especially so when the reasons upon which it was built no longer exist.

It is our considered judgment that incorporated charity should respond as do private individuals, business corporations, and others, when it does good in the wrong way. This pronouncement being, as it is, contrary to the rule announced in the Mikota and Servison cases, supra, they must be and are hereby overruled. In so doing this court does not stand alone. In addition to the authorities herein cited, see Nicholson v. Good Samaritan Hospital, 145 Fla. 360, 199 So. 344, 133 A. L. R. 809; O'Connor v. Boulder Colorado Sanitarium Assn., 105 Colo. 259, 96 P.2d 835, 133 A. L. R. 819; Moore v. Moyle, 405 Ill. 555, 92 N.E.2d 81; Rickbeil v. Grafton Deaconess Hospital, 74 N. D. 525, 23 N.W.2d 247, 166 A. L. R. 99; Sandwell v. Elliott Hospital, 92 N. H. 41, 24 A.2d 273; Dillon v. Rockaway Beach Hospital & Dispensary, 284 N. Y. 176, 30 N.E.2d 373; Haliburton v. General Hospital Soc., 133 Conn. 61, 48 A.2d 261; 10 Am. Jur., Charities, section 143; 14 C. J. S., Charities, section 75.

For the reasons above-stated the judgment of the trial court is reversed and cause remanded.—Reversed and remanded.

All JUSTICES concur.