Iris Iona **SMITH**, Appellant,

v.

The **IOWA LIQUOR CONTROL COMMISSION** et al., Appellees.

No. 53462.

Supreme Court of Iowa.

July 24, 1969.

Rehearing Denied Sept. 15, 1969.

Alfred M. Pabst, Albia, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and James D. Jenkins, Albia City Atty., for appellees.

GARFIELD, Chief Justice.

Plaintiff Iris Smith brought certiorari in the district court to review, as in excess of jurisdiction and illegal, orders of Iowa Liquor Control Commission (herein called "commission") confirming the revocation by operation of law of her class "B" state beer permit and cancelling her class "C" Iowa Liquor Control license. Following trial the cancellation of the liquor license was annulled but the order confirming revocation of the state beer permit was sustained. (See rule 316 Rules of Civil Procedure.) Plaintiff has appealed from so much of the court order as sustained the commission's action as to the beer permit.

For convenience we disregard the fact the members of the commission, the City of Albia and members of its council were also made parties to the certiorari action.

So much of the court order as annulled the commission's cancellation of the liquor license is not an issue on this appeal. We may say, however, such part of the court order is based on the fact the commission's action was "pursuant to section 123.32(d)." Code 1966 which provides for notice in writing to the license holder and reasonable opportunity for hearing before the action may be taken.

The commission's order as to the beer permit was taken under Code section 124.-30(3) which provides such a permit "shall automatically be revoked and shall immediately be surrendered by the permit holders * * * upon any of the following events: * * * 3. If any agent or employee of the permit holder is convicted of any violation of subsection three of section 124.20 in or about the place of business for which the permit is issued."

Section 124.20, subsection 3, so far as pertinent, provides: "No person shall knowingly sell * * * any * * * beer to any minor, except within a private home and with the knowledge and consent of the parent or guardian of said minor. No person shall knowingly permit any minor to purchase * * * beer on the premises of a class 'B' or class 'C' permit holder."

The commission's order, sustained by the trial court, refers to the two provisions just set out and recites that on March 4, 1968 a jury in Monroe County district court found Elsie Watts guilty of violating section 124.20, subd. 3, the violation occurred on the premises of the holder of permit 4159–67, revocation of the permit by operation of law was confirmed, the permit was declared immediately revoked and the bond of the permit holder forfeited.

The trial court reasoned that the statutes under which the beer permit was, in effect, revoked do not require prior notice to the permittee or opportunity to be heard; the right of a state legislature to provide for revocation of permits for the sale of beer without notice or hearing is well established; the commission's return to the writ of certiorari shows it had before it a copy of the record entry of the sentence of Elsie Watts, reports of its investigating officer, a copy of the statement of Steve Johnson, the minor to whom Elsie sold the beer in plaintiff's tavern, with a photocopy of his draft registration card which he exhibited to Elsie showing his then age as 18.

The court concluded it cannot be said the commission acted capriciously or arbitrarily (as plaintiff's petition for the writ alleged), with such records before it, in ordering revocation of the permit and the claim the commission denied plaintiff due process of law in so doing without notice or hearing is disposed of by our decision in Walker v. City of Clinton, 244 Iowa 1099, 1102–1105, 59 N.W.2d 785, 787–788.

I. Before considering the three errors plaintiff assigns upon this appeal reference to the evidence, much of which appears by stipulation, should be made.

Plaintiff Iris Smith operated a beer tavern in Albia more than 20 years until March 23, 1968 when she received the commission's order issued the previous day confirming the revocation by operation of law of her beer permit 4159–67. On January 12, 1968 the minor Steve Johnson entered the tavern and asked Elsie Watts, then acting as bar maid, to sell him two 6-packs of Hamm's beer. Asked to see his identification, Steve showed Elsie his draft registration card giving his age as 18 years, two months; Elsie handed him the beer, he left the tavern and was arrested for illegal possession of beer, evidently as a minor; the next day Steve pleaded guilty to the charge and was ultimately fined $50 or ordered to spend 15 days in jail;

without money to pay the fine, he went to jail. These matters appear from the signed statement of the minor, with photocopy of the draft card affixed, previously referred to, given the deputy sheriff and Albia Chief of Police on January 15.

On February 23, 1968 Elsie Watts was indicted for the offense of selling beer to a minor in violation of Code section 124.-20, subd. 3 quoted supra. Upon trial a jury found her guilty on March 4. She was fined $300 and costs on March 11 and ordered confined to jail one day for each $5 of the fine that was unpaid. The fine was paid that same day.

Plaintiff's beer permit 4159–67 expired March 7, 1968. Her application to the city council for renewal of the permit was withdrawn on March 4, the day Elsie was found guilty. A special meeting of the council was called for 5:00 P.M. on March 11, the day Elsie was sentenced, to consider another application made that day for renewal of the permit. The council voted unanimously to renew the permit for a year, effective the following day.

At this special meeting plaintiff's attorney appeared before the council and stated she contended Elsie Watts was not her employee or agent on January 12, 1968 when Elsie sold the beer to the minor; the issue of agency was brought to the council's attention and several of its members indicated that since the question was unclear they were willing to give plaintiff the benefit of the doubt as her tavern has existed more than 20 years, was the best in Albia and had given its officers the least difficulty. A transcript of part of the testimony of Elsie Watts and plaintiff in the criminal trial of the former was considered by the council; the city attorney advised it that in his opinion no license existed on March 11 when Elsie was sentenced and it was therefore not bound by the mandatory revocation provision of section 124.30(3) but could in its discretion refuse to issue a permit if it so chose.

Plaintiff is the only witness who testified personally at the trial of the certiorari case. Elsie Watts was not plaintiff's regular employee but helped her when Mary Gray, regularly employed, was unable to work. On January 12, 1968 Mary was ill and went to Iowa City for an examination. She obtained Elsie to help plaintiff that day. Elsie came to the tavern about 11, left to fix her husband's supper about five, returned to the tavern and stayed while plaintiff went to supper at six and left again when plaintiff returned.

Later that evening Elsie returned to the tavern again with her husband and, since plaintiff was waiting on other customers, Elsie waited on the minor Johnson without being asked to do so. Plaintiff admitted she saw the young man enter the tavern and saw Elsie go to the front of the place but denied she saw her sell him the beer. Plaintiff admitted she saw Elsie making out a piece of paper before the beer was sold the boy; she asked Elsie what had been written as she (plaintiff) was curious about it; Elsie replied it was none of plaintiff's business, also that she might need the paper.

Plaintiff further testified Elsie had helped Mary Gray about the last two years when Mary was unable to work in the tavern; on these occasions Elsie served beer and mixed drinks and did what Mary would have done; plaintiff insisted she had never paid Elsie and did not know whether Mary had done so.

The partial transcript of Elsie's testimony in her criminal trial, offered in evidence by plaintiff in the certiorari case and displayed to the city council at its special meeting, shows she then testified she assisted plaintiff some in her tavern on the night of January 12 but was not employed by her to work that night; Elsie and her husband are there about every night because plaintiff is there by herself and when she gets busy Elsie helps her; that was the situation on January 12; asked by the county attorney (in the crim-

inal trial) whether she had worked for Mrs. Smith quite a bit, Elsie replied probably about 30 years off and on; she had not been called to work in the tavern that night because she had worked there all day.

II. Some further reference to the decision appealed from is called for. The court held the fact the commission did not confirm the automatic revocation of the beer permit which expired March 7 until March 22 is not important since it was in effect when the offense was committed that led to the order; the only permit affected because of a violation of subsection 3 of section 124.20 is the one in force at the time of such violation; the issuance by the city council on March 11, 1968, of a new class B permit to plaintiff was forbidden by section 124.30(3) which provides: "If * * * any permit is revoked under the provisions of this section * * * the person whose permit is revoked shall not thereafter be allowed to obtain or hold a permit under this chapter."

III. The errors relied on for reversal are in substance: (1) The commission's order of March 22, 1968, without notice to anyone was illegal, arbitrary and without jurisdiction under the statutes then in effect. (2) The court erred in determining that an agency existed between Elsie Watts and appellant on January 12, 1968. (3) The commission's order violated plaintiff's constitutional right to due process of law in that it was made without notice to plaintiff or hearing date set.

IV. We will first dispose of the third assignment. Plaintiff's brief concedes we have consistently held revocation of beer permits without notice or opportunity for hearing does not violate the permittee's constitutional right to due process of law. In Walker v. City of Clinton, 244 Iowa 1099, 1102–1103, 59 N.W. 2d 785, 787, the city council revoked a beer permit issued by it without notice or hearing. In reversing the trial court's

annulment of the revocation on certiorari we held:

- "The right of a legislature to provide, without notice or hearing, for revocation of licenses, or permits, for the sale of beer is so well established that it seems hardly debatable. Constitutional questions of due process and taking of property without compensation have been repeatedly answered by the statement that a license to * * * sell * * * beer, * * * is a privilege granted by the state and is in no sense a property right. Such a license does not constitute a contract with the state or with the municipality or other governing body which the state empowers to issue it. When the licensee takes this privilege he does so subject to the provisions of the statutes under which it is granted; and if these statutes say or fairly imply that he is entitled to no notice or hearing before revocation, he cannot be heard to complain if he is given none."

Pertinent authorities are reviewed in some detail. The Walker decision is followed under similar facts in Michael v. Town of Logan, 247 Iowa 574, 577-579, 73 N.W.2d 714, 716-717.

Anno. 35 A.L.R.2d 1067, 1070, following the report of Green Mountain Post No. 1, American Legion v. Liquor Control Board, 117 Vt. 405, 94 A.2d 230, 35 A.L.R.2d 1060, cites numerous precedents from different jurisdictions, including our Walker case, for each of these propositions: "The numerical weight of authority is to the effect that, as a matter of constitutional law, a liquor or beer license can be revoked without notice and hearing" and "In particular, it has been held that due process is not violated by revocation without notice and hearing."

- Central States Theatre Corp. v. Sar, 245 Iowa 1254, 1263, 66 N.W.2d 450, 455, holds it is a violation of due process to grant unlimited discretion to an administrative board to deny a license to a legitimate business without setting up reasonable standards for the board to follow.

In distinguishing that case from Walker v. City of Clinton, supra, and cases cited therein, the Central States opinion says they "are based upon the rule that when a business is inherently illegal a permit to operate may be granted or refused at the will of the licensing body, is a privilege rather than a property right, and may be revoked without notice or hearing."

In support of her third assigned error plaintiff cites only the Walker and Central States decisions. Both are contrary to her contention. To like effect is Hornstein v. Illinois Liquor Control Comm., (Schaefer, J.) 412 Ill. 365, 106 N.E.2d 354, 357-358.

Davis Administrative Law Treatise, Vol. 1, section 7.19, page 499, although critical of Walker v. City of Clinton, supra, refers to it as "a representative case" and adds "In invoking the concept of privilege, the court had full support in the precedents, both in Iowa and elsewhere." Referring to the applicable Iowa statutes which, as we point out in Division V, infra, are virtually the same as those with which we are here concerned, Professor Davis says (page 501) "The statute had no explicit provision for or against a hearing."

The same author also states (page 503 of his treatise) "Recent cases using the privilege doctrine to justify denial of hearing on disputed facts are rather numerous." Among citations for the statement are Michael v. Town of Logan, supra, 247 Iowa 574, 73 N.W.2d 714, and Hornstein v. Illinois Liquor Control Comm., supra, 412 Ill. 365, 106 N.E.2d 354.

■ Our Walker case has stood for 16 years and Michael v. Town of Logan for more than 13½ years. Both involve the interpretation of our statutes providing for revocation of liquor and beer licenses. Many sessions of the legislature have been held since these decisions were filed and no material change has been made in the statutes governing the present appeal. Applicable here is this from 82 C.J.S. Statutes § 316, p. 549: "Where a particular

interpretation has been placed on a statute by the court, and the legislature at its subsequent meetings has left the statute materially unchanged, it is presumed that the legislature has acquiesced in that interpretation; * * *."

Precedents which follow the rule just quoted include General Mortgage Corporation of Iowa v. Campbell, 258 Iowa 143, 152, 138 N.W.2d 416, 421, and citations; Magreta v. Ambassador Steel Co., 380 Mich. 513, 158 N.W.2d 473, 475–476, and citation. We should be slow to repudiate the Walker and Michael decisions.

■ V. Under plaintiff's first assigned error it is argued the court erred in holding the commission did not act illegally in confirming the automatic revocation of her beer permit under sections 124.20(3) and 124.30(3) without prior notice to her and opportunity for hearing as to whether Elsie Watts was her agent or employee at the time beer was sold the minor. Concededly the commission acted without such prior notice. Unless we are to depart from our decisions cited in Division IV, supra, no notice was necessary unless required by statute.

The city council's revocation of the beer permit in Walker v. City of Clinton, supra, 244 Iowa 1099, 1106–1107, 59 N.W.2d 785, 789, was taken under section 124.34. We held notice or hearing was not required where the revocation was under this section and went on to point out the council could properly have so acted under sections 124.20 or 124.30. Referring to these last two sections which are here involved the opinion states: "Under either of these sections it (council) had a mandatory duty to revoke plaintiff's license if there was a sufficient showing of sale of beer to a minor, either by plaintiff or any employee. But neither in 124.20, 124.30 or 124.34 is there any provision for notice or hearing. The fact that the legislature did make such requirements in section 124.40 indicates it had them in mind. By omitting them from all sections except 124.-40 it clearly showed its intent they were not to be a part of 124.20, 124.30 or 124.-34, or to be read into them."

In Michael v. Town of Logan, supra, 247 Iowa 574, 576–578, 73 N.W.2d 714, 715–716, the town contended and we held sections 124.20, 124.30 and 124.34, all conferred jurisdiction on its council to revoke the permit without notice or hearing. The trial court was reversed for holding that while these sections provide certain violations of law constitute mandatory grounds for revocation of a permit, the guilt of the permittee with respect to such violations must first be "established in some legal manner." Since this was not done, the trial court ruled the council was without authority to revoke the permit without notice or hearing.

Plaintiff makes a like contention here as to the commission's lack of authority.

The annotation in 35 A.L.R.2d 1067 at 1077 cites a number of decisions, including Walker v. City of Clinton, supra, for the statement " * * * most courts refuse to read a hearing requirement into a statute which does not specifically provide for a hearing."

As the Walker and Michael cases hold, we find no statutory provision which requires prior notice and opportunity for hearing before a beer permit may be revoked under sections 124.20(3) or 124.30 (3). Certainly neither section contains any such requirement. It is significant that section 123.32(d) pursuant to which the commission purported to cancel plaintiff's liquor license expressly provides: "Any liquor control license issued under this chapter may, after notice in writing to the license holder and reasonable opportunity for hearing, be suspended or canceled by the issuing authority or the commission for any of the following causes: * * * d. An event which would have resulted in disqualification from receiving such license when originally issued, * * *."

Thus when the legislature intended to require notice and hearing before a license could be canceled it had no difficulty in expressing such intention in unmistakable language.

Plaintiff tells us the second paragraph of both sections 124.3 and 124.4 required prior notice and opportunity to be heard before the commission could make its order as to the beer permit. Except that the name "state permit board" has been changed to "Iowa Liquor Control Commission" both these provisions are the same, for present purposes, as they appeared in the 1950 Code when the Walker and Michael cases were decided. Further, plaintiff claims too much for these provisions in any event.

The provision of 124.3 which is relied upon is: "The commission shall issue state permits and shall have the power to revoke the same upon hearing *as provided in this chapter* and to review actions of the city or town councils * * * in refusing to revoke permits, *as hereinafter provided.*" (Emphasis added.) Section 124.3 does not require a hearing before a permit may be revoked except as chapter 124 requires it.

Section 124.4, in chapter 124, provides for hearing on a verified petition of at least ten taxpayers presented to a city or town council or board of supervisors or when the commission from its investigation asks that a hearing be had on the revocation of a permit and the council or board neglects or refuses to have such hearing, the matter may be presented to the commission upon such verified petition of taxpayers or the commission upon its own motion may conduct such hearing.

The second paragraph of section 124.4 provides the commission may review action of a city or town council or board of supervisors where a hearing has been had relative to revocation of a permit and the commission finds from its investigation that a review of the action should be had

or the council or board has failed to take action, the commission shall notify the permittee of the date fixed for the hearing. See in connection with the above provisions and other statutes Lehan v. Greigg, *257 Iowa 823, 829–830, 135 N.W.2d 80, 84.*

It seems clear the statutory provisions for hearing referred to in 124.3 and 124.4 did not require prior notice and hearing before the commission could make its order referring to plaintiff's permit. No taxpayers' petition was presented to the city council nor came before the commission. No "appeal" to the commission under 124.4 was taken. The city council held no hearing on the revocation of plaintiff's permit nor was the commission asked to review the former's action or failure to act.

Section 124.40, also in chapter 124, provides an additional, alternative remedy for revocation of beer permits by filing with a city or town council a complaint of ten or more citizens or a peace officer with knowledge of the facts. This statute also provides notice must be given the permit holder by the council and hearing had on the complaint.

Walker v. City of Clinton, supra, 244 Iowa 1099, 1107, 59 N.W.2d 785, 789, and Michael v. Town of Logan, supra, 247 Iowa 574, 577–579, 73 N.W.2d 714, 716–717, hold the provision in 124.40 for notice and hearing does not require notice or hearing where the revocation is mandatory under 124.20 and 124.30, involved here. There is no logical reason for reaching a different conclusion here merely because of the provision in 124.4 for notice and hearing under procedure not here applicable and not resorted to. Certainly the requirement of 124.40 for notice and hearing has no application here nor is such a claim made.

The views above expressed also find support in these provisions of section 123.-16 as now amended: "Powers. The com-

mission shall have the following functions, duties and powers: * * *

"7. To issue and grant permits, *including beer permits as authorized in chapter 124,* liquor control licenses and other licenses; and to revoke all such licenses and permits for cause, under this chapter *and chapter 124.*

* * * * * *

"9. * * * The enforcement division *shall* enforce the provisions of Title VI of the Code.

* * * * * *

"13. *To perform such duties and responsibilities as may be required under chapter one hundred twenty four (124) of the Code."*

The language just quoted, italicized by us, indicates changes made in section 123.-16 by section 1, chapter 155 Laws 62d G.A. (1967). The word "shall" in subsection 9 was substituted for "may". Title VI includes chapter 124. Subsection 13 is new.

We note plaintiff's brief concedes that if any procedure has been provided for proving agency or employment by the permittee her counsel has been unable to find it in the beer or liquor statutes. It seems some procedure would be provided for if any formal proof of such agency or employment were required.

■ Of course we do not hold the commission could act arbitrarily or capriciously in revoking plaintiff's permit. There must be some reasonable ground for the commission's action but it was not required to hold a formal hearing nor confined to the consideration of evidence that would be admissible in a court of law. It had the right to consider secondary and opinion evidence and hearsay. This matter is fully considered in Walker v. City of Clinton, supra, 244 Iowa 1099, 1109–1112, 59 N.W.2d 785, 790–792 and the conclusions there reached are adhered to in Michael v. Town of Logan, supra, 247 Iowa 574, 579–580, 73 N.W.2d 714, 717.

As stated in what precedes Division I hereof, the trial court considered whether it was shown the commission acted arbitrarily or capriciously in revoking the permit and concluded such showing was not made. To the evidence before the commission referred to by the court, supra, there may be added the fact an inspector for the commission went to Albia on February 19 to investigate the sale to the minor, talked to the chief of police about it and obtained from him a copy of the statement the minor made in his presence. The inspector's report was filed with the commission the next day. A further report was filed March 11, the day Elsie Watts was sentenced.

■ Plaintiff had the burden to prove the commission exceeded its jurisdiction or otherwise acted illegally as alleged by her. Sueppel v. Eads, 261 Iowa ——, 156 N.W.2d 115, 117; Smith v. City of Fort Dodge, Iowa, 160 N.W.2d 492, 495; Cedar Rapids Steel Transp., Inc. v. Iowa State Commerce Commission, Iowa, 160 N.W.2d 825, 831, and citations in these opinions.

■ The action of certiorari is by ordinary proceedings. Rule 317 Rules of Civil Procedure; Staads v. Board of Trustees of F. R. P. Fund, Iowa, 159 N.W.2d 485, 489. Appeal to us from the trial court's judgment is governed by the rules applicable to appeals in ordinary actions. R.C.P. 318. See also Rule 344(f), par. 1. We are not justified in reversing the trial court's holding the commission did not act arbitrarily or capriciously in making its order on the permit.

VI. Plaintiff's remaining assignment is that the trial court erred in determining an agency existed between her and Elsie Watts. The court made no finding Elsie was plaintiff's agent when she made the sale to the minor. As just explained, the trial court did determine the commission did not act capriciously or arbitrarily in making its order regarding the permit, as plaintiff's petition alleged.

The petition also alleged as another ground for issuance of the writ that in fact plaintiff had not violated either section 124.20(3) or section 124.30(3) and offered evidence obviously designed to support the allegation. This depended on whether Elsie was plaintiff's agent or employee at the time the sale was made.

Plaintiff's brief concedes there is no question as to Elsie's conviction, that this would have caused a mandatory revocation of plaintiff's beer permit and it would have been automatically revoked as provided in section 124.30(3) if Elsie was an agent or employee of plaintiff at the time of the sale. The brief also inferentially concedes there was evidence of agency in criticizing the court for referring to it without mention of other evidence said to show lack of agency.

■ As indicated at the end of Division V, supra, trial de novo in certiorari, either in the reviewing court or upon appeal to this court, is not permitted. Staads v. Board of Trustees of F.R.P. Fund, supra, and citations at pages 489–490 of 159 N.W.2d. We think there was substantial evidence before the trial court, which it evidently believed, that Elsie Watts was an agent or employee of plaintiff when the sale to the minor was made.

It is true plaintiff did not employ Elsie to help in the tavern on the day the sale was made. She arrived there about 11 as she usually did when she was taking the place of Mary, the regular employee; she told plaintiff she had come to take Mary's place; plaintiff "did not tell her not to;" Elsie did what Mary would have done had she been there; when plaintiff went home for her evening meal and perhaps also for the noon meal (the evidence is not clear) she left Elsie in sole charge of the tavern; plaintiff saw the minor enter the tavern and saw Elsie talking to him when she was behind the bar before the sale was made; plaintiff's curiosity was aroused. All this appears from plaintiff's own testimony.

According to the partial transcript of Elsie's testimony in her criminal trial, offered in evidence by plaintiff in the certiorari case, Elsie and her husband went to the tavern about every night because plaintiff was alone and when she gets busy Elsie helps her; that was the situation on January 12; Elsie had worked in that place about 30 years, off and on.

■ We have held many times the relationship of principal and agent is not dependent upon an express agreement between the parties, it may be and frequently is implied from their words or conduct and the circumstances of the particular case. Federal Land Bank of Omaha v. Union Bank & Trust Co. of Ottumwa, 228 Iowa 205, 211, 290 N.W. 512; Popejoy v. Eastburn, 241 Iowa 747, 754–755, 41 N.W.2d 764, 768–769; Wyckoff v. A. & J. Home Benevolent Assn. of Creston, Iowa, 254 Iowa 653, 657, 119 N.W.2d 126, 128, and citations in these opinions.

Affirmed.

LARSON, SNELL, MOORE and LeGRAND, JJ., concur.

BECKER, STUART, MASON and RAWLINGS, JJ., dissent.

BECKER, Justice.

I respectfully dissent.

The issue at this point is not whether Mrs. Smith should lose her license but rather whether the commission can cancel her license without a hearing preceded by reasonable notice. It might well develop that the commission can and should cancel the license but not, I submit, without notice and hearing.

Had the license holder been convicted of selling beer to a minor I would have no trouble concurring. The guilt of the permittee, with respect to the violation used as a basis for revocation, would have first been "established in a legal manner".

This problem has been examined in depth in I Davis, Administrative Law Treatise, sections 7.18 to 7.20, pages 493 to 506. Selective excerpts follow:

" * * * The large body of state case law which relies upon the privilege concept to justify a denial of opportunity to be heard on issues of adjudicative fact where licenses of various kinds are at stake is one of the most prominent areas of weakness in all judge-made administrative law. This body of law is much in need of a full critical examination.

"The state courts are badly befuddled by the privilege doctrine in allowing the death sentence to be imposed upon a lawful business by petty officials who determine disputed facts about the business without giving the owner of the business a chance to be heard. Even if the investment in the business is a large one, even if the businessman denies the charges against him, even if the only sensible system for resolving the disputed facts is to put the evidence on the record and allow opportunity for rebuttal or explanation or cross-examination, and, in some of the cases, even if the only evidence in support of the charges is undisclosed gossip or rumor, still the courts hold that the valuable interest may be destroyed without a hearing. The only reason for such astonishing law is the idea of privilege—the inscrutable concept that often causes able and conscientious judges to promote procedural injustice.

"The state courts, with dismaying uniformity, spin the theory that licenses are of two kinds—those which are mere privileges and those which involve legal rights or property rights. A holder of or applicant for the first kind is not entitled to procedural fairness. The test, so we are told, is whether the licensed activity can be constitutionally prohibited.

"But no court explains why procedural fairness should be denied to those whose businesses can be constitutionally prohibited. The courts often seem tacitly to reason that because sale of liquor may be prohibited, therefore an individual seller of liquor may be unfairly treated. *Such reasoning is palpably fallacious. If selling liquor is unlawful, the state does not license it; no procedural unfairness is involved in general legislation making the sale of liquor unlawful. But if the state or other governmental unit has issued a license to a seller, then the business is lawful, and a seller who has made his investment and developed his business should be entitled to fair treatment.* Revoking or refusing to renew the license without giving the licensee a chance to be heard on issues of fact about the business is not fair treatment. (Emphasis supplied.)

"If the interests affected were too trivial to justify a fair hearing, or if the advantages of a hearing were thought to be outweighed by some other interest, such as national security in loyalty cases, then the denial of hearing could be sound. But the courts give no such reason for allowing the unfair procedure. The usual reason is merely that the license is a privilege because the business could constitutionally be prohibited altogether.

"True, occasionally the courts say that a licensee takes his license with notice that it may be summarily revoked and that he cannot complain because he has consented to unfair treatment. This argument might have some degree of validity if a legislature has deliberately set up a system of granting licenses on the condition that they may be summarily revoked and if the only question before the court is the constitutionality of such a system. But such circumstances are rare. The typical case is one in which the legislature has failed to make explicit provision for or against hearings, so that the true lawmaker on the subject is the court. Even if constitutions are assumed to permit a system of granting licenses with the understanding that they may be revoked without fair procedure, such a system is still bad government because contrary to our traditions of fairness, and the courts

should not allow such a system unless legislative bodies have explicitly provided for it. To the extent that the law of requiring or dispensing with fair hearings is judge-made-law—as it is almost altogether, whether the theory is constitutional interpretation, statutory interpretation, or common law—the courts should reject the notion that valuable businesses may be administratively destroyed without giving their owners a chance to be heard on disputed facts. * * *

"In a good many of the cases invoking the privilege doctrine, the denial of a hearing is sound because facts were not in dispute; for instance, revoking licenses without a hearing on the basis of prior convictions in court is entirely proper when the fact of the convictions is not challenged.[1] In some cases invoking the doctrine, denial of administrative hearings was fair because the licensee had opportunity for de novo judicial hearing. In some cases denial of hearing was fair because the action was legislative action revoking all licenses of a specified kind, where the action did not depend upon adjudicative facts.

"Although many of the privilege cases are old, and although the privilege doctrine has long been adversely criticized, the movement away from the doctrine has been disappointingly small. Recent cases using the privilege doctrine to justify denial of hearing on disputed facts are rather numerous.

"California has set an especially good example for other state courts to follow. Even though a California court had held in 1935 that a liquor license may be revoked without opportunity for hearing,[2] a

California court held in 1940 that 'we cannot forget that the law contemplates justice, whether the license is granted as a privilege or recognized as a vested right; that under the American system of justice it is the policy of our law that a person should not be deprived even of a "permit" to engage in a legitimate business without a fair and impartial hearing and without an opportunity to present competent evidence for consideration by the licensing authority in opposition to the proposed revocation of his permit'.[3] The California Supreme Court, referring to the 1935 decision that a liquor license could be revoked without a hearing, has declared that 'the conclusion reached in that case is contrary to both principle and authority, and it is disapproved to the extent that it is inconsistent with the present decision.' In 1952 the same court, in holding that an application for a license for an amusement business could not be denied without a hearing, reviewed its own decisions and again made clear that whether or not alcoholic beverages are involved, 'Law contemplates justice whether it is granted as a privilege or recognized as a vested right. * * * [T]he right to engage in the sale of beverages * * * may not be arbitrarily denied by the board of supervisors without a hearing or an opportunity on the part of the petitioner to present the merits of her application to the licensing tribunal.'[4]

"Massachusetts has provided a different kind of leadership. Its Administrative Procedure Act, unlike the statutes in other states, provides: 'Except as otherwise provided in this section, no agency shall revoke or refuse to renew any license unless it has first afforded the licensee an op-

1. This sentence would justify the commission action here if the licensee had been convicted, but it was the claimed agent of the licensee, not Mrs. Smith, who was found guilty.

2. State Board of Equalization of California v. Superior Court, 5 Cal.App.2d 374, 42 P.2d 1076 (1935).

3. Carroll v. California Horse Racing Board, 16 Cal.2d 164, 105 P.2d 110 (1940).

4. Fascination, Inc. v. Hoover, 39 Cal.2d 260, 246 P.2d 656 (1952).

portunity for hearing' in conformity with provisions specifying a trial type of hearing.

"Samples of recent holdings that licenses regarded as 'rights' may not be revoked without a hearing involve exclusion of a physician from a public hospital, a bus line license, a license of a barber college, and a taxi license. Cases treating refusal to renew in the same way as revocation, so that a hearing is required, involve a drive-in theater, a school of cosmetology, and an insurance license."

About two pages of criticism by Mr. Davis of Walker v. City of Clinton, 244 Iowa 1099, 59 N.W.2d 785 is deliberately omitted here. Suffice it to say, the writer leaves little doubt that the case ought to be overruled. I agree.

The Davis treatise is followed in the supplement with citations to the courts of New York, Massachusetts and New Jersey which have followed its reasoning. Of greater importance is the citation to Hornsby v. Allen, 326 F.2d 605 (5 Cir., 1964) which reviews the action of a state court upholding licensing decisions without a hearing. The federal circuit court of appeals has told at least one state that the procedural unfairness inherent in license actions, without hearing, will be re-examined in the federal courts under the Civil Rights Act, 28 U.S.C.A. § 1343. If Hornsby v. Allen, supra, becomes the law in all jurisdictions (it is already the law in the 5th circuit) we will simply have invited federal interference by failure to properly analyze the problem ourselves.

One of our own cases points the way for a new look at the problems. In Koelling v. Board of Trustees of Mary Frances Skiff Hospital, (1967), 259 Iowa 1185, 1197, 146 N.W.2d 284, 291–292, we said: " 'Whether the right to practice medicine be classed as a property right, strictly speaking, or as a mere privilege is not material; for whichever name be given it, it is a valuable right which cannot be taken away without due process of law, the essential elements of

which are notice and opportunity to defend. [citing cases] But due process does not require that any particular form of proceedings be observed, but only that the same shall be regular proceedings, in which notice is given of the claim asserted and an opportunity to defend against it [citing cases].' Smith v. State Board of Medical Examiners, 140 Iowa 66, 69, 117 N.W. 1116; Elk River Coal & Lbr. Co. v. Funk, 222 Iowa 1222, 1227, 271 N.W. 204, 110 A.L.R. 1415; Gilchrist v. Bierring, 234 Iowa 899, 911, 14 N.W.2d 724; Brinkley v. Hassig, 130 Kan. 874, 289 P. 64; Brinkley v. Hassig, 10 Cir., 83 F.2d 351.

" 'Under general requirements applicable to quasi-judicial proceedings, or under the requirement of a full hearing, a party has the right, and the hearing must afford him the opportunity, to defend the right involved, usually by argument, proof, and cross-examination of witnesses, with knowledge of the evidence, the witnesses to be heard, and the claims and contentions of the opponents, and the trier of facts must have reached his decision in accordance with the facts proved.' 2 Am. Jur.2d 227, Administrative Law, § 417."

It seems to me the foregoing acknowledgments by this court cannot be squared with what was said in Walker v. City of Clinton, supra, and Michael v. Town of Logan, 247 Iowa 574, 73 N.W.2d 714, or what the majority says here. The only possible rationale would be the idea that sale of beer and whiskey is "inherently illegal." Mr. Davis has pretty well destroyed this concept but one should also ask; if the business is inherently illegal, why is it licensed? Why was the ill-fated 18th Amendment necessary? Why does the state itself engage in such inherently illegal business?

The view that a prior judicial construction of a statute should not be changed is often expressed as an excuse for a court's failure to correct its own mistakes, but it is not always thus. In Fitzgerald v. Hale, 247 Iowa 1194, 1204,

78 N.W.2d 509, 515 this court changed its construction of a statute after some 90 years with the observation:

"Courts are properly slow to overrule a line of decisions, even though, as here, the change will affect no property rights or interests. Moreover, there is a rule of statutory construction that when a statute has received a judicial construction and is substantially * reenacted, such construction may be regarded as having been adopted by the legislature. 50 Am.Jur. Statutes, section 443; 82 C.J.S. Statutes § 370b (1). *However, these matters do not constitute a bar to the correction by a court of its palpable errors. They are merely factors to be weighed in determining the advisability of such correction.*

"Consideration of these and other factors has resulted in the conclusion that the advantages which will result from correcting the erroneous rule of our former decisions outweigh the objections thereto." (Emphasis added.)

Cf. Schaefer, J., 34 Chicago L.Rev. 3, 24 Precedent and Policy;[5] Haynes v. Presbyterian Hospital Ass'n, 241 Iowa 1269, 1272, 45 N.W.2d 151, 153; Boyer v. Iowa High School Athletic Association (dissent), 256 Iowa 337, 356, 127 N.W.2d 606.

The point on which Mrs. Smith demands a hearing is simple. Was she bound by, or is she to be punished for, the actions of Elsie Watts? It may well be that Elsie Watts was in fact acting as Mrs. Smith's barmaid but procedural fairness requires a hearing. Mr. Davis, at page 506, sets forth three pertinent quotations: "The essence of justice is largely procedural. Time and again, thoughtful judges have emphasized this truth. Mr. Justice Douglas: 'It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice.

Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.' Mr. Justice Jackson: 'Procedural fairness and regularity are of the indispensable essence of liberty.' Mr. Justice Frankfurter: 'The history of liberty has largely been the history of procedural safeguards.' "

For the reasons herein expressed I would hold due process considerations require a hearing before this license is revoked and remand for further proceedings.

STUART, MASON and RAWLINGS, JJ., join in this dissent.

---

5. "It (the legislature) has little time and little taste for the job of keeping the common law current."